**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| INGRID ANGLIN, COLLEEN GORMAN, PAUL LAMBRAKIS, ELIJAH NATAL, MATTHEW NELSON, COURTNEY PARKER, and SHAYAN TARI, Individually and on Behalf of All Others Similarly Situated, | Case No.:  Judge: |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; EDGEWELL PERSONAL CARE LLC; PLAYTEX PRODUCTS, LLC; and SUN PHARMACEUTICALS, LLC, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Ingrid Anglin, Colleen Gorman, Paul Lambrakis, Elijah Natal, Matthew Nelson, Courtney Parker, and Shayan Tari (collectively "Plaintiffs") bring this class action lawsuit against Defendants Edgewell Personal Care Company; Edgewell Personal Care Brands, LLC; Edgewell Personal Care LLC; Playtex Products, LLC;  and Sun Pharmaceuticals, LLC (collectively "Defendants" or "Banana Boat"), on behalf of themselves and all other similarly situated persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen labelled as "SPF 50" or "SPF 50+" ("the Products") and allege as follows:

1

## **NATURE OF THE ACTION**

1.      Consumers, like Plaintiffs and the putative classes, buy sunscreen to prevent sunburns and other harmful health effects caused by exposure to UV radiation, including but not limited to skin cancer and early skin aging.  Sunscreen prevents burning and decreases skin's exposure to UV radiation by absorbing UV radiation on the skin or by reflecting or scattering all or part of the UV radiation away from the skin.

2.      Sun Protection Factor ("SPF") informs the consumer of the level of sunburn protection provided by the sunscreen.  A sunscreen with a higher SPF, such as SPF 30, filters out more UV radiation and provides more protection as compared to a sunscreen with a lower SPF. The SPF of a sunscreen is required to be clearly stated on the sunscreen's label.

3.      This is a mislabeling case regarding three sunscreens manufactured by Defendants – Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen – that Defendants labeled, marketed, advertised, and sold as "SPF 50" or "SPF 50+" when they, in fact, were not.  Plaintiffs' claims arise solely out of Defendants' misrepresentation on the labels of each and every bottle of the Products that the SPF therein was "SPF 50" or "SPF 50+."

4.      Plaintiffs are some of the hundreds of thousands of consumers who have purchased the Products for use on their children based on the advertised SPF number. Consumers, like Plaintiffs, reasonably expect that a sunscreen bottle labeled "SPF 50" or "SPF 50+" will actually contain a sunscreen with a true SPF of "50," and not a significantly lower amount of protection.

5.     Plaintiffs bring this putative class action seeking damages sustained as a direct and proximate result of Defendants' violations of various state laws as outlined in greater detail herein, in connection with Defendants' marketing and sale of the Products.  Plaintiffs and putative class members have been, and continue to be, injured by Defendants' pattern and practice of placing into the stream of commerce sunscreen products containing a false SPF number, and largely inflated UV protection numbers, which Defendants manufactured, distributed, and sold.

6.     Defendants currently or have in the past tested, manufactured, labeled, distributed, advertised, marketed, produced, and sold sunscreen products under the brand name "Banana Boat," including but not limited to Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen.

7.     Defendants have known, or should have known, for years that the Products contain less UV protection, and have a lower SPF, than Defendants advertised and stated on the products' label, causing Plaintiffs and class members to rely upon, and to purchase products that contain a false and significantly inflated SPF number.

8.     All claims in this matter arise from the identical, false, written affirmative statements on the product labels as outlined in detail herein – *i.e.*, that Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen and Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen were "SPF 50+" while Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen was "SPF 50" when, in fact, they were not.

9.     Defendants' statements are false and misleading to a reasonable consumer because the Products do not contain the advertised level of SPF.  The statements are likely to

3

deceive, and have in fact deceived, the public.

10.     With notice and knowledge of their material misrepresentations or omissions, Defendants have not offered to compensate their customers to remedy their damages.

11.     Had Plaintiffs and members of the putative classes known that the Products contained less UV protection than Defendants advertise, Plaintiffs and members of the putative classes would not have purchased the sunscreen or relied upon it to protect them from UV radiation.

12.     As a direct and proximate result of Defendants' deceptive acts and practices in connection with their manufacturing, labeling, and sale of Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen, Plaintiffs and members of the putative classes have sustained economic injury by paying for a falsely advertised product and being deprived of the full intended use of their purchased sunscreen.

13.     Plaintiffs seek damages and equitable remedies under statutory and common law claims for themselves and all members of the putative classes.  Identified definitively below, the putative classes include consumers who have purchased Defendants' Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

15.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) Defendant Edgewell Personal Care Company has its principal place of business in this District; (ii) Defendants are authorized to, and do in fact, conduct business in this District and thus have intentionally availed themselves of the laws and markets within this District through the marketing, distribution, and sale of their products in this District; and (iii) Defendants currently do substantial business in this District.

## PARTIES

17.     Plaintiff Ingrid Anglin is a citizen of Florida who resides in Broward County, Florida.  Plaintiff Anglin purchased a 6 ounce twin pack of Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in April 2016 for approximately $10 from a Target in Deerfield Beach, Florida.

18.     Plaintiff Colleen Gorman is a citizen of Illinois who resides in Cook County, Illinois.  Plaintiff Gorman purchased a 6 ounce container of Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen and a 6 ounce container of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen in May of 2016 at a Walgreen's in or near Tinley Park, Illinois, for which she paid about $14 for both.

19.     Plaintiff Paul Lambrakis is a citizen of New York who resides in Kings County, New York.   In approximately February of 2016, Plaintiff Lambrakis purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen from Rite Aid in Brooklyn, New York, for which he paid approximately $12.

20.     Plaintiff Matthew Nelson is a citizen of New York who resides in Nassau County,

New York. In early 2015, Plaintiff Nelson purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen from CVS in Hewlett, New York. The product cost approximately $8.

21.     Plaintiff Elijah Natal is a citizen of New Jersey who resides in Camden County, New Jersey.  Plaintiff Natal purchased a 10 ounce container of Banana Boat Kids Tear-Free Sting-Free Lotion Sunscreen on or about summer of 2016 for approximately $7.99 in Chery Hill, New Jersey.

22.     Plaintiff Courtney Parker is a citizen of New Jersey, residing in Monmouth County, New Jersey.  On February 6, 2015, Plaintiff Parker purchased a 9.5 ounce container of Banana Boat Kids Tear-Fee Sting-Free Continuous Spray Sunscreen from Amazon.com, for which she paid approximately $9.  On July 7, 2015, Plaintiff Parker purchased a 9.5 ounce container of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen for which she also paid approximately $9.

23.     Plaintiff Shayan Tari is a citizen of California who resides in Los Angeles, California.  Plaintiff Tari purchased a 6 ounce container of Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen in early 2017 at a Rite-Aid in Los Angeles, California, paying around $11 for it.

24.     Defendant Edgewell Personal Care Company is a domestic corporation with its headquarters and principal place of business located in St. Louis, Missouri.  Edgewell Personal Care Company is licensed to and does conduct business throughout the United States, including this District.   Edgewell Personal Care Company manufactures and markets personal care products, including the Products, to consumers in this District and across the United States.

25.     Defendant Edgewell Personal Care Brands, LLC is a Delaware Limited Liability

Corporation with its headquarters in Shelton, Connecticut.  Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company.

26.     Defendant Edgewell Personal Care, LLC is a Delaware Limited Liability Corporation with its headquarters in Shelton, Connecticut.  Edgewell Personal Care, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company.

27.     Defendant Playtex Products, LLC is a Delaware foreign limited liability company with its headquarters and principal place of business located in St. Louis, Missouri.  Playtex Products, LLC is licensed to and does conduct business throughout the United States including this District.  Playtex Products, LLC markets Banana Boat sunscreen as one of its brands, including the Products.  Playtex Products, LLC is a subsidiary of Edgewell Personal Care Company.

28.     Defendant Sun Pharmaceuticals, LLC is a Delaware limited liability company with its headquarters and principal place of business located in Dover, Delaware.  Sun Pharmaceuticals, LLC is licensed to and does conduct business throughout the United States, including this District. Sun Pharmaceuticals, LLC is a subsidiary of Edgewell Personal Care Company.

29.     Together, Defendants Edgewell Personal Care Company, Edgewell Personal Care, LLC, Edgewell Personal Care Brands, LLC, Playtex Products, LLC, and Sun Pharmaceuticals, LLC jointly manufactured, distributed, advertised, labeled and sold the Products in Missouri and throughout the United States, with each defendant jointly determining that each such container of the product would bear the name "Banana Boat" and would list "SPF 50" on each uniformly-worded product label.

## STATEMENT OF FACTS

### A.  Banana Boat's Kids and Baby Sunscreens

30.     The Products are produced, manufactured, sold and distributed by Defendants.

31.     The products are available online and in hundreds of retail stores, including but not limited to Walgreens, Shoprite, Rite-Aid, CVS, T.J. Maxx, and Target.

32.     SPF – which stands for Sun Protection Factor – is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin, which is based on objective evidence and standardized protocols.

33.     The SPF number stands for the approximate measure of time a person who has applied the sunscreen can stay out in the sun without getting burned, compared to the amount of time a person with no protection will get burned in similar conditions.

34.     Thus, SPF 50 will allow a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.

### B.  Defendants' Uniform Written Misrepresentations

35.     Since the initial offering of the Products, each and every container of these products has borne a uniformly-worded label which identifies the name of the product in large letters on the front as "Banana Boat Kids" or "Banana Boat Baby" and "SPF 50" or "SPF 50+" as depicted in Figures 1-3, below.

**Figure 1**



**Figure 2**



**Figure 3**



36.    In  actuality,  rigorous  scientific  testing  has  revealed  that  the  Products  do  not
provide an SPF of 50, much less "50+".

37.    Such  testing  includes,  but  is  not  limited  to,  testing  conducted  by  the  noted

consumer protection periodical *Consumer Reports*, which reported in May of 2016 that its own testing had revealed that Banana Boat Kids SPF 50 sunscreen lotion had an SPF of only 8 and stated "the most problematic products were Banana Boat Kids Tear-Free, Sting-Free Lotion … which [was] labeled as SPF 50 but [was] found to have only SPF 8."

38.     In addition, Plaintiffs conducted their own independent testing of the Products, utilizing the methodology for SPF testing mandated by the FDA.

39.     Specifically, the independent testing conducted by Plaintiffs was conducted in compliance with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310, (Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR 201.327).

40.     The results of the independent testing conducted by Plaintiffs were consistent with the results suggested by *Consumer Reports'* test results and confirmed that the Products had actual SPFs substantially lower than the claimed SPF 50 or "50+".

41.     Plaintiffs' investigation concluded that all three products, clearly labeled as containing SPF 50 or "50+", contained an SPF of less than 37.8 and no more than a 30.1.

42.     An SPF of even 37.8, much less 30.1 offers significantly less sun protection than an SPF of 50.

43.     An SPF of 30.1 to 37.8 is less than any of the SPFs offered by Banana Boat as part of their Kids or Baby lines, and those SPF ratings allow users to remain in the sun without skin damage for a significantly shorter period than an SPF of 50 or "50+."

44.     Defendants, as developers, manufacturers, and exclusive sellers and distributors of the Products, have been aware since the Products' inception, that the true SPFs of these products were much lower than 50.

12

45.     Indeed, Defendants did testing on the Products prior to them being offered for sale and, of necessity, such testing would have made Defendants aware that the Products do not have an SPF rating of 50.

46.     Despite this, Defendants purposely claimed an SPF factor of 50 or "50+" in order to induce the false belief in consumers that they were purchasing a product which provided a high level of SPF.

47.     Defendants' false claim that the Products have an SPF rating of 50 or "50+" is especially egregious and material because the product is specifically marketed by Defendants for use on children and infants and even have the words "Kids" or "Baby" in the product name.

48.     Defendants have been notified of the false advertisement but have not remedied the problem.

49.     At no time did Defendants advise either Plaintiffs or putative class members that their sunscreen contained less UV protection than Defendants otherwise advertised.

50.     Plaintiffs and class members purchased the Products with no reason to suspect or know that the Products contained less UV protection than Defendants otherwise advertised and stated in writing on the product label.

51.     Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the Products which the Plaintiffs and class members could not and did not review.

52.     Indeed, the Products are credence goods because their properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor.  *See* Richard A. Posner, *An*

*Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1489 (1999) ("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'").

53.     In purchasing the Products, Plaintiffs and the class members had no choice but to necessarily and justifiably rely upon the written statements on the product as accurate.

54.     Had Plaintiffs known that the actual SPF ratings of the Products were substantially lower than what Defendants stated on the product labels, Plaintiffs would not have purchased the product or would not have paid as much for the product.

55.     As the direct and proximate result of Defendants' false and misleading statements and omissions, Plaintiffs and class members have suffered economic injury by being deprived of the full intended use of the purchased product and have been deprived of the benefit of the bargain they were promised by Defendants.

56.     By marketing, selling and distributing the Products to purchasers in Missouri and throughout the United States, Defendants made actionable statements that the sunscreen contained the advertised UV protection and at all times failed to disclose that the Products did not, in fact, contain SPF 50 or "50+".

57.     Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

58.     Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

59.     As the distributers, marketers, producers, manufacturers and sellers of the Products, Defendants possessed specialized knowledge regarding the data and information

14

concerning the chemical formula of the Products which the Plaintiffs and class members could not and did not review.

60.     All of Plaintiffs' state law claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

61.     Such parallel state claims alleging affirmative violations of FDA regulations are expressly permitted by 21 U.S.C. §343-1(a).

62.     Further, Plaintiffs' claims arise, *inter alia*, from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

## CLASS ALLEGATIONS

63.     Plaintiffs repeat and reallege each allegation above as if set forth herein in full.

64.     Plaintiffs seek to bring this case as a class action, pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Procedure.

65.     Plaintiffs seek certification of a nationwide class (the "Nationwide Class") defined as follows:

> All persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in the United States from March 2_, 2014 to the present.

66.     Additionally, or alternatively, Plaintiffs seek certification of the following state sub-classes (the "State Subclass(es)" or the "subclass(es)"), defined as follows:

> New York Subclass: All persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in New York from March 2_, 2014 to the present.

New Jersey Subclass: All persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in New Jersey from March 2_, 2014 to the present.

Florida Subclass: All persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in Florida from March 2_, 2014 to the present.

Illinois Subclass: All persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in Illinois from March 2_, 2014 to the present.

California Subclass: All persons who purchased Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen in California from March 2_, 2014 to the present.

67.     Excluded from each class are Defendants, their affiliates, employees, officers and directors; persons or entities that purchased the sunscreen for purposes of resale; and the Judge(s) assigned to this case.

68.     Plaintiffs reserve the right to amend or modify the proposed class definitions in connection with a motion for class certification or as warranted by discovery.

69.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

70.     The members of the class and subclasses for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

71.     Upon information and belief, the proposed Nationwide Class is composed of over 100,000 persons and each State subclass is composed of at least 10,000 persons.

72.     No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendants.

73.     Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product label as outlined in detail herein.

74.     There are common questions of law and fact affecting the rights of all class members, including, *inter alia*, the following:

- The actual SPFs of Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen;

- Whether Defendants' act in placing a uniform written statement on the label of the product, stating "SPF 50" or "SPF 50+" was a false, affirmative statement of fact; and

- Whether Plaintiffs and members of the Class suffered damages and the appropriate measure of that loss.

75.     Plaintiffs are members of the class and subclass they seek to represent.

76.     The claims of Plaintiffs are not only typical of all class and subclass members, they are identical.

77.     All claims of Plaintiffs and the class arise from the same identical, false, written statement of affirmative fact on the Banana Boat Kids Tear-Free Sting-Free Continuous Spray Sunscreen, Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen, and/or Banana Boat Baby Tear-Free Sting-Free Lotion Sunscreen labels as described herein.

78.     All claims of Plaintiffs and the class are based on the same legal theories.

79.     Plaintiffs have no interests antagonistic to, or in conflict with, the class or subclasses.

80.     Plaintiffs will thoroughly and adequately protect the interests of the class and

subclass he seeks to represent, having retained qualified and competent legal counsel to represent themselves and the class and subclass.

81.     Defendants have acted and refused to act on grounds generally applicable to the class and subclass, thereby making appropriate injunctive and declaratory relief for the classes as a whole.

82.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

83.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member were less than $15 per bottle purchased and, as such, individual actions are not economically feasible.

84.     Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CLAIM FOR RELIEF
### Breach of Warranty
### On Behalf of the Nationwide Class and Each State Subclass

85.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

86.     Defendants sold the Products in their regular course of business.  Plaintiffs and the class members purchased the Products.

87.     Defendants made promises and representations in an express warranty provided to all consumers, namely that the Products each had an SPF of 50 or "50+," which became the basis of the bargain between Defendants and Plaintiffs and each class member.

88.     Defendants gave these express warranties to Plaintiffs and each class member in

written form on the labels of the Products.

89.     Defendants' written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

90.     Defendants breached the warranty because the uniform written statement on each container of the Products, claiming an SPF of 50 or "50+", is false, and the Products did not contain the properties Defendants represented.

91.     The false SPF information provided on the labels were false when the sales took place and were undiscoverable to Plaintiffs and the class members at the time of purchase.

92.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiffs and the class in terms of paying for the goods at issue.  Defendants had actual notice of the false labeling information and to date have taken no action to remedy their breaches of express and implied warranty.

93.     On June 13, 2016, Plaintiff Colleen Gorman sent actual, written notice of Defendants' breach of warranty by letter to Defendant Edgewell Personal Care, LLC.

94.     On April 5, 2018, Plaintiffs Anglin, Lambrakis, and Natal sent actual, written notice of Defendants' breach of warranty by letter to Defendant Edgewell Personal Care Company.

95.     Further, Defendants previously knew or should have known of the falsity of the label on the Products, due to, *inter alia*, Defendants' testing of the Products.

96.     Defendants have refused to remedy such breaches.

97.     By placing the Products in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiffs and class members that the Products were accurately labeled in conformance with the law.

98.     Defendants' breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid.  As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

99.     As a result of Defendants' breach of these warranties, Plaintiffs and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Contract
### In the Alternative, on Behalf of the Nationwide Class and Each State Subclass

100.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

101.     By operation of law, there existed an implied contract for the sale of the Products between Defendants and Plaintiffs and each class member who purchased the Products.

102.     By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

103.     By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each class member.

104.     As a result of that breach, Plaintiff and each class member suffered damages.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### In the Alternative, on Behalf of the Nationwide Class and Each State Subclass

105.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

114.    Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

115.    Plaintiffs and the class members have conferred substantial benefits on Defendants by purchasing the Products, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

116.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the class members were given and received with the expectation that the Products would be as represented and warranted.  For Defendants to retain the benefit of the payments under these circumstances is inequitable.

117.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including representing that the product had an SPF of 50 or "50+", Defendants each reaped benefits, which resulted in each Defendant wrongfully receiving profits.

118.    Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the class members.

119.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation

21

obtained by Defendants through this inequitable conduct.

## FOURTH CLAIM FOR RELIEF
**Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1,** *et seq***.**
**By Plaintiff Colleen Gorman on Behalf of the Illinois Subclass**

121.   Plaintiff Gorman repeats and realleges the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

122.   This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA").

123.   The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 815 ILCS 505/1.

124.   Plaintiff and the Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

125.   Defendants were engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

126.   815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact … in the conduct of any trade or commerce."

127.   815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."

128.   Defendants' unfair and deceptive practices, including falsely labeling Coppertone Sport High Performance SPF 30 sunscreen spray as SPF 30 when it is not, are likely to mislead –

and have misled – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. §352.  This includes misleading Plaintiff and the Illinois Subclass.

129.    Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein, which practices offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

130.    Plaintiff and members of the Illinois Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they purchased the product, which they would not have purchased or would not have paid as much for had they known the true facts.

131.    The damages suffered by Plaintiff and the Illinois Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

132.    Pursuant to 815 ILCS 505/10a, Plaintiff and the Illinois Subclass seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.  Additionally, pursuant to 815 ILCS 505/10a, Plaintiff and the Illinois Subclass make claims for economic damages, punitive damages, and attorneys' fees and costs.

133.    Concurrent with the filing of this complaint, and as required by 815 ILCS 505/10a(d), Plaintiff will mail a copy of this complaint to the Illinois Attorney General.

**FIFTH CLAIM FOR RELIEF**
**New York General Business Law § 349**
**By Plaintiffs Paul Lambrakis and Matthew Nelson on Behalf of the New York Subclass**

134.    Plaintiffs Lambrakis and Nelson repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

135.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

136.    In  their sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of New York General Business Law § 349.

137.    Plaintiffs Lambrakis and Nelson and the members of the New York Subclass are consumers who purchased products from Defendants for their personal use.

138.    Defendants have engaged in deceptive and misleading practices, which include, without limitation, selling the Products with less UV protection than Defendants otherwise advertise, causing Plaintiffs Lambrakis and and the members of the New York Subclass to overpay for the sunscreen based upon a false, inflated SPF.

139.    By reason of this conduct, Defendants have engaged and continue to engage in deceptive conduct in violation of the New York General Business Law.

140.    Defendants' actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs Lambrakis and Nelson and the members of the New York Subclass have sustained from having paid for and consumed Defendants' products.

141.    As a result of Defendants' violations, Plaintiffs Lambrakis and Nelson and the members of the New York Subclass have suffered damages and are entitled to recover those damages as well as reasonable attorney's fees from Defendants.

**SIXTH CLAIM FOR RELIEF**
**New York General Business Law § 350**
**By Plaintiffs Paul Lambrakis and Matthew Nelson on Behalf of the New York Subclass**

142.    Plaintiffs Lambrakis and Nelson repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

143.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

144.    Pursuant to the statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

145.    Defendants' labeling and advertising of the Products were and are misleading in a material respect due to the false labeling and statements regarding its products as described in detail previously, and Defendants have therefore directly violated New York General Business Law § 350, causing damage to Plaintiffs Lambrakis and Nelson and the members of the New York Subclass.

146.    As a result of Defendants' violations, Plaintiffs Lambrakis and Nelson and the members of the New York Subclass have suffered damages due to the violation and are therefore entitled to recover damages and reasonable attorney's fees from Defendants.

### SEVENTH CLAIM FOR RELIEF
### New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.
### By Plaintiffs Elijah Natal and Courtney Parker On Behalf of the New Jersey Subclass

147.    Plaintiffs Natal and Parker repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

148.    The New Jersey Consumer Fraud Act ("NJCFA") clearly applies to all sales of the Products sold in New Jersey.

149.    The NJCFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services.  *See Marascio v. Campanella*, 298 N.J. Super. 491, 500 (App. Div. 1997).

150.    The NJCFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.  *See Furst v. Einstein Moomjy*, 182 N.J. 1, 11-12 (2004) ("The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad

purpose of safeguarding the public.").

151.    With regard to the NJCFA, "[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 315, 319 (App. Div. 1986).

152.    For this reason, the "history of the Act is one of constant expansion of consumer protection." *Kavky v. Herbalife International of America*, 359 N.J. Super. 497, 504 (App. Div. 2003).

153.    N.J.S.A. 56:8-2 of the NJ CFA prohibits "unlawful practices," which are defined as:

> "The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."

154.    The Products are "credence goods," because their properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010).

155.    The New Jersey Supreme Court in *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010), spoke regarding the relationship between dishonest product labeling and credence goods, stating: "A rational consumer does not randomly take a bottle of pills off a shelf and then purchase it without reading the packaging and labeling."

156.    In order to state a cause of action under the NJCFA, a plaintiff does not need to show reliance by the consumer. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332

N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance is not required in suits under the NJ CFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'").

157.    Rather, the NJCFA requires merely a causal nexus between the false statement and the purchase, not actual reliance.  *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010) ("It bears repeating that the CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss.").

158.    The purchase of a credence good, where the label on the product contains misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under the NJCFA. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010).

159.    By the acts alleged herein, Defendants have violated the NJ CFA.

160.    Specifically, Defendants have made identical, false, written, misstatements of affirmative fact to Plaintiffs and each member of the New Jersey Subclass on the label of each container of the Products sold in New Jersey, as previously described in detail herein.

161.    These statements were false when made and Defendants knew that these statements were false when made.

162.    As a result of these false, written affirmative misstatements of material fact, Plaintiffs Natal and Parker and each member of the New Jersey Subclass have suffered an ascertainable loss.

163.    Specifically, Plaintiffs Natal and Parker and each member of the New Jersey Subclass have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the NJ CFA according to the New Jersey Supreme Court and New

27

Jersey Appellate Division – in that Plaintiffs Natal and Parker and each member of the New Jersey Subclass received something less than what was represented by Defendants on the product's label.

## EIGHTH CLAIM FOR RELIEF
### New Jersey Truth in Consumer Contract, Warranty And Notice Act
### N.J.S.A. 56:12-14, *et seq.*
### By Plaintiffs Elijah Natal and Courtney Parker on Behalf of the New Jersey Subclass

164.    Plaintiffs Natal and Parker repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

165.    Plaintiff Natal, Plaintiff Parker and each the member of the New Jersey Subclass are "consumers" within the meaning of N.J.S.A. 56:12-15 and 16.

166.    Defendants are "sellers" within the meaning of N.J.S.A. 56:12-15 and 16.

167.    The product labels on the Products are both a consumer "notice" and "warranty" within the meaning of N.J.S.A. 56:12-15 and 16.

168.    By the acts alleged previously alleged in detail herein, Defendants have violated N.J.S.A. 56:12-15 and 16 because, in the course of Defendants' business, Defendants have displayed and/or offered written consumer notices and warranties to Plaintiffs Natal and Parker and each member of the New Jersey Subclass which contained provisions which violated their clearly established legal rights under New Jersey state law, within the meaning of N.J.S.A. 56:12-15 and 16.

169.    Pursuant to N.J.S.A. 56:12-17, this class complaint seeks a statutory penalty of $100 for each New Jersey Subclass member, as well as actual damages and attorney's fees and costs.

## NINTH CLAIM FOR RELIEF
**Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201,** *et seq.*
**By Plaintiff Ingrid Anglin on Behalf of the Florida Subclass**

121.    Plaintiff Anglin repeats and realleges the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

122.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. §§ 501.201, *et seq.*

123.    The express purpose of the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

124.    The sale of the Products at issue in this action was a "consumer transaction" within the scope of the FDUTPA.  Fla. Stat. §§ 501.201-501.213.

125.    Plaintiff and each member of the Florida Subclass are "consumers" as defined by the FDUTPA.  Fla. Stat. § 501.203.

126.    Defendants' product are "goods" within the meaning of the FDUTPA.

127.    Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

128.    The FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

129.    The FDUTPA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2).

130.    Defendants' unfair and deceptive practices, including labeling the Products as

SPF 50 or "50+" when they are not, are likely to mislead – and have misled – the consumer acting reasonably under the circumstances.  Fla. Stat. § 500.04; 21 U.S.C. § 343. This includes misleading Plaintiff and the members of the Florida Subclass.

131.    Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

132.    Specifically, Defendants have represented that the Products have a SPF rating of 50 or "50+", when, in fact, the Products do not have an SPF rating of 50 or "50+" and provide far less SPF protection.

133.    Plaintiff and each member of the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they purchased and used Defendants' product.

134.    The damages suffered by Plaintiff and each member of the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as described above.

135.    Plaintiff and each member of the Florida Subclass seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of Defendants.  Fla. Stat. § 501.211(1).

136.    Additionally, Plaintiff and each member of the Florida Subclass make claims for actual damages, attorney's fees and costs.  Fla. Stat. §§ 501.2105, 501.211(2).

## TENTH CLAM FOR RELIEF
### California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.
### By Plaintiff Shayan Tari On Behalf of the California Subclass

137.    Plaintiff Tari repeats and realleges the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

138.    The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

139.    In the course of conducting their business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq.*

140.    Plaintiff Tari and the other California Subclass members reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

141.    Defendants' actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engage in deceptive and false advertising, and misrepresent and omit material facts regarding their products, and thereby offend an established public policy, and engage in immoral, unethical, oppressive, and/or unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq.*

142.    Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

143.    Defendants' actions, claims, nondisclosures, and misleading statements, as alleged previously in detail in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq.*

144. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

145. As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiff Tari and each member of the California Subclass have in fact been harmed as described above.

146. If Defendants had not misrepresented the Products as being of a higher SPF level than it was, Plaintiff Tari and the other California Subclass members would not have purchased Defendants' product or would not have paid as much for the product as they did.

147. As a result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiff Tari and the other California Subclass members have each suffered injury in fact and lost money.

148. As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the UCL.

149. Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for Plaintiff Tari and the other California Subclass members.

150. As a result of Defendants' conduct in violation of the UCL, Plaintiff Tari and the other California Subclass members have each been injured as alleged herein in amounts to be proven at trial because they purchased the product without full disclosure of the material facts discussed above.

151. As a result, Plaintiff Tari and the other California Subclass members seek restitution and disgorgement of all money obtained from members of the California Subclass as a result of unlawful, unfair, and/or fraudulent conduct, and also seek injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## ELEVENTH CLAIM FOR RELIEF
### California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*.
### By Plaintiff Shayan Tari On Behalf of the California Subclass

152.    Plaintiff Tari repeats and realleges the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

153.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*. (the "CLRA").  Plaintiff Tari and each member of the California Subclass is a consumer as defined by California Civil Code § 1761(d). The affected products are goods within the meaning of the CLRA.

154.    Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Tari and the other California Subclass members, which were intended to result in, and did result in, the sale of the affected products: (5)  Representing that [the products] have … characteristics, … uses [or] benefits … which they do not have; (7)  Representing that [the products] are of a particular standard, quality, or grade … if they are of another; and (9)  Advertising goods … with intent not to sell them as advertised.

155.    Defendants violated the CLRA by marketing and advertising the Products in the manner described in detail previously herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

156.    Defendants were in a position to know, both from its own product knowledge and independent testing that the SPF of the product fell far short of its advertised levels.

157.    Defendants intended that Plaintiff Tari and the other California Subclass members, would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the product.

158.    California Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate California Civil Code § 1770.

159.    On January 3, 2018, and pursuant to Cal. Civ. Code § 1782(a), Plaintiff Tari sent Defendants a letter demanding that Defendants rectify the problems listed herein.

160.    Defendants failed to respond to Plaintiff Tari's letter.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief against Defendants as set forth below:

a.  Certify the proposed Nationwide Class and Illinois Subclass as class actions pursuant to Federal Rule of Civil Procedure 23;

b.  Appoint Plaintiffs as representative of the classes;

c.  Appoint the undersigned as class counsel for the class and subclass;

d.  Enter an order for injunctive and declaratory relief as described herein;

e.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein and/or restitution, to include interest and pre-judgment interest;

f.  Award Plaintiff reasonable attorneys' fees and costs; and

g.  Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  April 20, 2018

by:  /s/ Carl V. Malmstrom
Carl V. Malmstrom
Theodore B. Bell
**WOLF HALDENSTEIN**
  **ADLER FREEMAN & HERZ LLC**
70 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: 312-984-0000
Fax: 312-214-3110
malmstrom@whafh.com
tbell@whafh.com

Janine Lee Pollack
**WOLF HALDENSTEIN**
  **ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: 212-545-4600
Fax: 212-686-0114
pollack@whafh.com

Stephen P. DeNittis
Joseph A. Osefchen
Shane T. Prince
**DeNITTIS OSEFCHEN PRINCE, PC**
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: 856-797-9951
Fax: 856-797-9978
sdenittis@denittislaw.com

Frederic S. Fox
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Fax: 212-687-7714
ffox@kaplanfox.com

Laurence D. King
Mario M. Choi
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Fax:  415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

Hunter Jay Shkolnik
Paul Brian Maslo
Salvatore C. Badala
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue, 11th Floor
New York, NY 10017
Telephone: 212-397-1000
Fax: 646-843-7603
pmaslo@napolilaw.com
hunter@napolilaw.com
sbadala@napolilaw.com

Marc A. Wites
**WITES LAW FIRM**
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954-933-4400
Fax: 954-354-0205
mwites@witeslaw.com

Joseph G. Sauder
Matthew D. Schelkopf
**SAUDER SCHELKOPF**
555 Lancaster Ave.
Berwyn, PA 19312
Telephone: 610-200-0580
jgs@sstriallawyers.com
mds@sstriallawyers.com

Brittany Weiner
**IMBESI LAW, P.C.**
450 Seventh Avenue
Suite 1408
New York, NY 10123
Telephone: 646-767-2271
Fax: 212-658-9177
brittany@lawicm.com

Justin Farahi
Raymond M. Collins
**FARAHI LAW FIRM APC**
22760 Hawthorne Boulevard Suite 230
Torrance, CA 90505
Telephone: 310-774-4500
Fax: 424-295-0557
justin@farahilaw.com
raymondfarahilaw@gmail.com

*Counsel for Plaintiffs and the Proposed
Classes*

whafhch55410