**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| COLLEEN GORMAN and COURTNEY PARKER, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; EDGEWELL PERSONAL CARE LLC; PLAYTEX PRODUCTS, LLC; and SUN PHARMACEUTICALS, LLC,<br><br>              Defendants. | Case No.:  4:18-cv-639<br><br>Judge:  Hon. Noelle C. Collins<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

<u>**FIRST AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs Colleen Gorman and Courtney Parker, (collectively "Plaintiffs") bring this class action lawsuit against Defendants Edgewell Personal Care Company; Edgewell Personal Care Brands, LLC; Edgewell Personal Care LLC; Playtex Products, LLC; and Sun Pharmaceuticals, LLC (collectively "Defendants" or "Banana Boat"), on behalf of themselves and all other similarly situated persons who purchased Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen labelled as "SPF 50+" ("the Product") and allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.     Consumers, like Plaintiffs and the putative classes, buy sunscreen to prevent sunburns and other harmful health effects caused by exposure to UV radiation, including but not

1

limited to skin cancer and early skin aging.  Sunscreen prevents burning and decreases skin's exposure to UV radiation by absorbing UV radiation on the skin or by reflecting or scattering all or part of the UV radiation away from the skin.

2.     Sun Protection Factor ("SPF") informs the consumer of the level of sunburn protection provided by the sunscreen.  A sunscreen with a higher SPF, such as SPF 50, filters out more UV radiation and provides more protection as compared to a sunscreen with a lower SPF. The SPF of a sunscreen is required to be clearly stated on the sunscreen's label.

3.     This is a mislabeling case regarding Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+", which Defendants labeled, marketed, advertised, and sold as "SPF 50+" when, in fact, the actual SPF of this Product was far lower than 50.  Plaintiffs' claims arise solely out of Defendants' misrepresentation on the labels of each and every bottle of the Product that the SPF therein was "SPF 50+."

4.     Plaintiffs are some of the hundreds of thousands of consumers who have purchased the Product for use on their children based on the advertised SPF number. Consumers, like Plaintiffs, reasonably expect that a sunscreen bottle labeled "SPF 50+" will actually contain a sunscreen with a true SPF of at least 50, and not an SPF significantly lower than 50.

5.     Plaintiffs bring this putative class action seeking damages sustained as a direct and proximate result of Defendants' violations of various state laws as outlined in greater detail herein, in connection with Defendants' marketing and sale of the Product.  Plaintiffs and putative class members have been, and continue to be, injured by Defendants' pattern and practice of placing into the stream of commerce sunscreen products containing a false SPF number, and largely inflated UV protection numbers, which Defendants manufactured, distributed, and sold.

6.     Defendants currently or have in the past tested, manufactured, labeled, distributed,

advertised, marketed, produced, and sold sunscreen products under the brand name Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" which were labeled "SPF 50+."

7.      Defendants have known, or should have known, for years that the Product contained less UV protection, and have an SPF far lower than 50. Yet Defendants advertised and stated on the Product's label that the Product was "SPF 50+", causing Plaintiffs and class members to rely upon, and to purchase products that contain a false and significantly inflated SPF number.

8.      All claims in this matter arise from the identical, false, written affirmative statements on the Product labels as outlined in detail herein: that Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" was "SPF 50+," when, in fact, the Product's actual SPF was far lower than 50.

9.      Defendants' statements are false and misleading to a reasonable consumer because the Product does not contain the advertised level of SPF.  The statements are likely to deceive, and have in fact deceived, the public.

10.      With notice and knowledge of their material misrepresentations or omissions, Defendants have not offered to compensate their customers to remedy their damages.

11.      Had Plaintiffs and members of the putative classes known that the Product contained less UV protection than Defendants advertise, Plaintiffs and members of the putative classes would not have purchased the sunscreen or relied upon it to protect them from UV radiation.

12.      As a direct and proximate result of Defendants' deceptive acts and practices in connection with their manufacturing, labeling, and sale of Banana Boat Baby Tear-Free Sting-

Free Continuous Spray Sunscreen "SPF 50+", Plaintiffs and members of the putative classes have sustained economic injury by paying for a falsely advertised product and being deprived of the full intended use of their purchased sunscreen.

13.     Plaintiffs seek damages and equitable remedies under statutory and common law claims for themselves and all members of the putative classes.  Identified definitively below, the putative classes include consumers who have purchased Defendants' Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+".

<u>**JURISDICTION & VENUE**</u>

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because Plaintiffs and Defendants are citizens of different states.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) Defendant Edgewell Personal Care Company has its principal place of business in this District; (ii) Defendants are authorized to, and do in fact, conduct business in this District and thus have intentionally availed themselves of the laws and markets within this District through the marketing, distribution, and sale of their products in this District; and (iii) Defendants currently do substantial business in this District.

<u>**PARTIES**</u>

16.     Plaintiff Colleen Gorman is a citizen of Illinois who resides in Cook County, Illinois.  Plaintiff Gorman purchased a 6 ounce container of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" in May of 2016 at a Walgreen's in or near Tinley Park, Illinois, for which she paid approximately $7.

17.     Plaintiff Courtney Parker is a citizen of New Jersey, residing in Monmouth County, New Jersey.  On July 7, 2015, Plaintiff Parker purchased a 9.5 ounce container of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" for which she paid approximately $9.

18.     Defendant Edgewell Personal Care Company is a domestic corporation with its headquarters and principal place of business located in St. Louis, Missouri.  Edgewell Personal Care Company is licensed to and does conduct business throughout the United States, including this District.   Edgewell Personal Care Company manufactures and markets personal care products, including the Product, to consumers in this District and across the United States.

19.     Defendant Edgewell Personal Care Brands, LLC is a Delaware Limited Liability Corporation with its headquarters in Shelton, Connecticut.  Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company.

20.     Defendant Edgewell Personal Care, LLC is a Delaware Limited Liability Corporation with its headquarters in Shelton, Connecticut.  Edgewell Personal Care, LLC is a wholly-owned subsidiary of and/or 100% controlled by Edgewell Personal Care Company.

21.     Defendant Playtex Products, LLC is a Delaware foreign limited liability company with its headquarters and principal place of business located in St. Louis, Missouri.  Playtex Products, LLC is licensed to and does conduct business throughout the United States including this District.  Playtex Products, LLC markets Banana Boat sunscreen as one of its brands, including the Product.  Playtex Products, LLC is a subsidiary of Edgewell Personal Care Company.

22.     Defendant Sun Pharmaceuticals, LLC is a Delaware limited liability company with its headquarters and principal place of business located in Dover, Delaware.   Sun

Pharmaceuticals, LLC is licensed to and does conduct business throughout the United States, including this District. Sun Pharmaceuticals, LLC is a subsidiary of Edgewell Personal Care Company.

23.     Together, Defendants Edgewell Personal Care Company, Edgewell Personal Care, LLC, Edgewell Personal Care Brands, LLC, Playtex Products, LLC, and Sun Pharmaceuticals, LLC jointly manufactured, distributed, advertised, labeled and sold the Product in Missouri and throughout the United States, with each defendant jointly determining that each such container of the Product would list "SPF 50+" on each uniformly-worded Product label.

## STATEMENT OF FACTS

24.     The Product is produced, manufactured, sold, labeled and distributed by Defendants.

25.     The Product is available online and in hundreds of retail stores, including but not limited to Walgreens, Shoprite, Rite-Aid, CVS, T.J. Maxx, and Target.

26.     SPF – which stands for Sun Protection Factor – is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin, which is based on objective evidence and standardized protocols.

27.     The SPF number stands for the approximate measure of time a person who has applied the sunscreen can stay out in the sun without getting burned, compared to the amount of time a person with no protection will get burned in similar conditions.

28.     Thus, SPF 50 will allow a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.

### A.     Defendants' Uniform Written Misrepresentations

29.     Since the initial offering of the Product, each and every container of the Product

has borne a uniformly-worded label which identifies the name of the product in large letters on the front as "Banana Boat Baby" and "SPF 50+" as depicted in Figure 1, below.

**Figure 1**



30.     In actuality, rigorous scientific testing has revealed that the Product provides an SPF of far less than 50, much less "50+".

31.     Testing conducted by the noted consumer protection periodical *Consumer Reports*

in May of 2016 revealed that various Banana Boat sunscreen products had an SPF far lower than what was represented on the label.

32.     The testing done by *Consumer Reports* is not the basis of Plaintiffs' claims. Rather, the reporting on the results of the *Consumer Reports* testing gave notice to Plaintiffs of a potential problem with SPF claims on the label of Banana Boat sunscreen products.

33.     Plaintiffs' claims are based on independent testing of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" which was conducted by Plaintiffs' experts utilizing the methodology for SPF testing mandated by the FDA.

34.     The independent testing performed by Plaintiffs was conducted in compliance with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310, Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR 201.327.

35.     The results of the independent testing conducted by Plaintiffs found that Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" had an actual SPF substantially lower than SPF 50.

36.     Such independent testing occurred between December 17, 2018 and February 6, 2019, and was conducted by Consumer Product Testing Company ("CPT"), a laboratory located in Fairfield, New Jersey.

37.     Effectiveness testing for sunscreen is specifically described in 21 C.F.R. § 201.327(i).  The FDA requires that SPF testing use a solar simulator which provides a series of wavelengths and spectrum ranges which simulate actual sunlight, and mandates the duration of usage of the solar simulator, the number of subjects (including medical history and skin type), location and size of testing on subjects, and evaluation of the test site for each individual, as well

as the statistical method for calculating the SPF value.

38.    Plaintiffs' test study met all required testing procedures for SPF testing specified under 21 C.F.R. § 201.327(i), including the use of a solar simulator with the required wavelengths and spectrum, correct number of test subjects (who were subjected to the correct medical history evaluation and physical examination), correct test sites and subsites (in size and placement), correct application of sunscreen and SPF standard to the test sites (in the correct amounts), correct UV dose applied to the test sites, and correct statistical analysis.  *See* Exhibit A, CPT Final Report ("Report") (detailing specific protocol used in SPF testing).  The attached Report is incorporated herein in its entirety.

39.    Further, Plaintiffs' testing used ten valid test subjects, as required by 21 C.F.R. § 201.327(i), all with the required medical histories and necessary Type I, II, or III skin types needed for a valid study. For each subject, test sites and subsites were selected and test materials were applied as required by 21 C.F.R. § 201.327(i).  After the requisite waiting period, the test subsites were exposed to UV radiation as required by 21 C.F.R. § 201.327(i).  The subsites were then evaluated and the SPF of the Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50" was calculated as required by 21 C.F.R. § 201.327(i).

40.    Based on this testing, the average SPF of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" was calculated to be 21.4 SPF.  *See* Exhibit A, Report. The attached Report findings are incorporated herein in their entirety.

41.    An SPF of 21.4 offers significantly less sunscreen protection than an SPF of 50, allowing users to remain in the sun without damage for a significantly shorter period than a true SPF 50 would allow.

42.    Defendants, as developers, manufacturers, and exclusive sellers and distributors

of the Product, have been aware since the Product's inception that the true SPFs of the Product was much lower than 50.

43.     Indeed, Defendants did testing on the Product prior to it being offered for sale and, of necessity, such testing would have made Defendants aware that the Product does not have an SPF rating of 50.

44.     Despite this, Defendants purposely claimed an SPF factor of "50+" on the Product label in order to induce the false belief in consumers that they were purchasing a product which provided a high level of SPF.

45.     Defendants' false claim that the Product had an SPF rating of "50+" is especially egregious and material because the product is specifically marketed by Defendants for use on infants and even have the words "Baby" in the Product name.

46.     Defendants have been notified of the false advertisement but have not remedied the problem.

47.     At no time did Defendants advise either Plaintiffs or putative class members that their sunscreen contained less UV protection than Defendants otherwise advertised.

48.     Plaintiffs and class members purchased the Product with no reason to suspect or know that the Product contained less UV protection than Defendants otherwise advertised and stated in writing on the product label.

49.     Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product which the Plaintiffs and class members could not and did not review.

50.     Indeed, the Product is a credence goods because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase

and such properties and benefits are made known to consumers only through the information provided on the label by the Product's manufacturer and distributor.  See Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1489 (1999) ("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'").

51.     In purchasing the Product, Plaintiffs and the class members had no choice but to necessarily and justifiably rely upon the written statements on the Product label as accurate.

52.     Had Plaintiffs known that the actual SPF rating of the Product was substantially lower than the "SPF 50+" which Defendants stated on the Product label, Plaintiffs would not have purchased the Product or would not have paid as much for the Product.

53.     As the direct and proximate result of Defendants' false and misleading statements and omissions, Plaintiffs and class members have suffered economic injury by being deprived of the full intended use of the purchased Product and have been deprived of the benefit of the bargain they were promised by Defendants.

54.     By marketing, selling and distributing the Product to purchasers in Missouri and throughout the United States, Defendants made actionable statements that the sunscreen contained the advertised UV protection and at all times failed to disclose that the Product did not, in fact, contain SPF "50+".

55.     Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

56.     Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

57.     As the distributers, marketers, producers, manufacturers and sellers of the Product, Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product which the Plaintiffs and class members could not and did not review.

58.     All of Plaintiffs' state law claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

59.     Such parallel state claims alleging affirmative violations of FDA regulations are expressly permitted by 21 U.S.C. §343-1(a).

60.     Further, Plaintiffs' claims arise, *inter alia*, from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

## <u>CLASS ALLEGATIONS</u>

61.     Plaintiffs repeat and reallege each allegation above as if set forth herein in full.

62.     Plaintiffs seek to bring this case as a class action, pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Procedure.

63.     Plaintiffs seek certification of a nationwide class (the "Nationwide Class") defined as follows:

> All persons who purchased Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" in the United States from April 20, 2014 to the present.

64.     Additionally, or alternatively, Plaintiffs seek certification of the following state sub-classes (the "State Subclass(es)" or the "subclass(es)"), defined as follows:

> <u>New Jersey Subclass</u>: All persons who purchased Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" in New Jersey from April 20, 2014 to the present.

> Illinois Subclass: All persons who purchased Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" in Illinois from April 20, 2014 to the present.

65.     Excluded from each class are Defendants, their affiliates, employees, officers and directors; persons or entities that purchased the sunscreen for purposes of resale; and the Judge(s) assigned to this case.

66.     Plaintiffs reserve the right to amend or modify the proposed class definitions in connection with a motion for class certification or as warranted by discovery.

67.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

68.     The members of the class and subclasses for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

69.     Upon information and belief, the proposed Nationwide Class is composed of over 100,000 persons and each State subclass is composed of at least 10,000 persons.

70.     No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendants.

71.     Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product label as outlined in detail herein.

72.     There are common questions of law and fact affecting the rights of all class members, including, *inter alia*, the following:

- The actual SPFs of Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+";

- Whether Defendants' act in placing a uniform written statement on the label of the Product, stating "SPF 50+," was a false, affirmative statement of fact; and

- Whether Plaintiffs and members of the Class suffered damages and the

appropriate measure of that loss.

73.     Plaintiffs are members of the class and subclass they seek to represent.

74.     The claims of Plaintiffs are not only typical of all class and subclass members, they are identical.

75.     All claims of Plaintiffs and the class arise from the same identical, false, written statement of affirmative fact on Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen "SPF 50+" label as described herein.

76.     All claims of Plaintiffs and the class are based on the same legal theories.

77.     Plaintiffs have no interests antagonistic to, or in conflict with, the class or subclasses.

78.     Plaintiffs will thoroughly and adequately protect the interests of the class and subclass they seek to represent, having retained qualified and competent legal counsel to represent themselves and the class and subclass.

79.     Defendants have acted and refused to act on grounds generally applicable to the class and subclass, thereby making appropriate injunctive and declaratory relief for the classes as a whole.

80.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

81.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member were less than $15 per bottle purchased and, as such, individual actions are not economically feasible.

82.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CLAIM FOR RELIEF**
**Breach of Warranty**
**On Behalf of the Nationwide Class and Each State Subclass**

83.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

84.     Defendants sold the Product in their regular course of business.  Plaintiffs and the class members purchased the Product.

85.     Defendants made promises and representations in an express warranty provided to all consumers, namely that the Product had an SPF of "50+," which became the basis of the bargain between Defendants and Plaintiffs and each class member.

86.     Defendants gave these express warranties to Plaintiffs and each class member in written form on the labels of the Product.

87.     Defendants' written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

88.     Defendants breached the warranty because the uniform written statement on each container of the Product, claiming an SPF of "50+", is false, and the Product did not contain the properties Defendants represented.

89.     The false SPF information provided on the labels were false when the sales took place and were undiscoverable to Plaintiffs and the class members at the time of purchase.

90.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiffs and the class in terms of paying for the goods at issue.  Defendants had actual notice of the false labeling information and to date

have taken no action to remedy their breaches of express and implied warranty.

91.     On June 13, 2016, Plaintiff Colleen Gorman sent actual, written notice of Defendants' breach of warranty by letter to Defendant Edgewell Personal Care, LLC.

92.     Further, Defendants previously knew or should have known of the falsity of the label on the Product, due to, *inter alia*, Defendants' testing of the Product.

93.     Defendants have refused to remedy such breaches.

94.     By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiffs and class members that the Product was accurately labeled in conformance with the law.

95.     Defendants' breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid.  As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

96.     As a result of Defendants' breach of these warranties, Plaintiffs and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Contract**
**In the Alternative, on Behalf of the Nationwide Class and Each State Subclass**

97.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

16

98.     By operation of law, there existed an implied contract for the sale of the Product between Defendants and Plaintiffs and each class member who purchased the Product.

99.     By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

100.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each class member.

101.    As a result of that breach, Plaintiffs and each class member suffered damages.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**In the Alternative, on Behalf of the Nationwide Class and Each State Subclass**

102.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

104.    Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

105.    Plaintiffs and the class members have conferred substantial benefits on Defendants by purchasing the Product, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

106.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the class members were given and received with the expectation that the Product would be as represented and warranted.  For Defendants to retain the benefit of the payments under these circumstances is inequitable.

107.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Product, including representing that the product had an SPF of "50+", Defendants each reaped benefits, which resulted in each Defendant

wrongfully receiving profits.

108.    Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the class members.

109.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants through this inequitable conduct.

**FOURTH CLAIM FOR RELIEF**
**Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.**
**By Plaintiff Colleen Gorman on Behalf of the Illinois Subclass**

110.    Plaintiff Gorman repeats and realleges the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

111.    This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA").

112.    The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 815 ILCS 505/1.

113.    Plaintiff and the Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

114.    Defendants were engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

115.    815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or

omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact … in the conduct of any trade or commerce."

116.    815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."

117.    Defendants' unfair and deceptive practices, including falsely labeling Banana Boat Baby Tear-Free Sting-Free Continuous Spray Sunscreen as "SPF 50+" when it is not, are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. §352.  This includes misleading Plaintiff and the Illinois Subclass.

118.    Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein, which practices offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

119.    Plaintiff and members of the Illinois Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they purchased the product, which they would not have purchased or would not have paid as much for had they known the true facts.

120.    The damages suffered by Plaintiff and the Illinois Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

121.    Pursuant to 815 ILCS 505/10a, Plaintiff and the Illinois Subclass seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement. Additionally, pursuant to 815 ILCS 505/10a, Plaintiff and the Illinois Subclass make claims for economic damages, punitive damages, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*
### By Plaintiff Courtney Parker On Behalf of the New Jersey Subclass

122.    Plaintiff Parker repeats and realleges the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

123.    The New Jersey Consumer Fraud Act ("NJCFA") clearly applies to all sales of the Product sold in New Jersey.

124.    The NJCFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services.  *See Marascio v. Campanella*, 298 N.J. Super. 491, 500 (App. Div. 1997).

125.    The NJCFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.  *See Furst v. Einstein Moomjy*, 182 N.J. 1, 11-12 (2004) ("The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

126.    With regard to the NJCFA, "[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 315, 319 (App. Div. 1986).

127.    For this reason, the "history of the Act is one of constant expansion of consumer protection."  *Kavky v. Herballife International of America*, 359 N.J. Super. 497, 504 (App. Div. 2003).

128.    N.J.S.A. 56:8-2 of the NJ CFA prohibits "unlawful practices," which are defined as:

> "The act, use or employment of any unconscionable commercial practice,
> deception, fraud, false pretense, misrepresentation, or the knowing,

20

concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."

129.     The Product is a "credence goods," because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor.  *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010).

130.     The New Jersey Supreme Court in *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010), spoke regarding the relationship between dishonest product labeling and credence goods, stating: "A rational consumer does not randomly take a bottle of pills off a shelf and then purchase it without reading the packaging and labeling."

131.     In order to state a cause of action under the NJCFA, a plaintiff does not need to show reliance by the consumer.  *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance is not required in suits under the NJ CFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'").

132.     Rather, the NJCFA requires merely a causal nexus between the false statement and the purchase, not actual reliance.  *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010) ("It bears repeating that the CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss.").

133.     The purchase of a credence good, where the label on the product contains misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under

21

the NJCFA. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010).

134.    By the acts alleged herein, Defendants have violated the NJ CFA.

135.    Specifically, Defendants have made identical, false, written, misstatements of affirmative fact to Plaintiff Parker and each member of the New Jersey Subclass on the label of each container of the Product sold in New Jersey, as previously described in detail herein.

136.    These statements were false when made and Defendants knew that these statements were false when made.

137.    As a result of these false, written affirmative misstatements of material fact, Plaintiff Parker and each member of the New Jersey Subclass have suffered an ascertainable loss.

138.    Specifically, Plaintiff Parker and each member of the New Jersey Subclass have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the NJ CFA according to the New Jersey Supreme Court and New Jersey Appellate Division – in that Plaintiff Parker and each member of the New Jersey Subclass received something less than what was represented by Defendants on the Product's label.

### SIXTH CLAIM FOR RELIEF
**New Jersey Truth in Consumer Contract, Warranty And Notice Act**
**N.J.S.A. 56:12-14, *et seq*.**
**By Plaintiff Courtney Parker on Behalf of the New Jersey Subclass**

139.    Plaintiff Parker repeats and realleges the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

140.    Plaintiff Parker and each the member of the New Jersey Subclass are "consumers" within the meaning of N.J.S.A. 56:12-15 and 16.

141.    Defendants are "sellers" within the meaning of N.J.S.A. 56:12-15 and 16.

142.    The label on the Product is both a consumer "notice" and "warranty" within the

meaning of N.J.S.A. 56:12-15 and 16.

143.    By the acts alleged previously alleged in detail herein, Defendants have violated N.J.S.A. 56:12-15 and 16 because, in the course of Defendants' business, Defendants have displayed and/or offered written consumer notices and warranties to Plaintiff Parker and each member of the New Jersey Subclass which contained provisions which violated their clearly established legal rights under New Jersey state law, within the meaning of N.J.S.A. 56:12-15 and 16.

144.    Pursuant to N.J.S.A. 56:12-17, this class complaint seeks a statutory penalty of $100 for Plaintiff Parker and each New Jersey Subclass member, as well as actual damages and attorney's fees and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief against Defendants as set forth below:

a.  Certify the proposed Nationwide Class, Illinois Subclass and New Jersey Subclass as class actions pursuant to Federal Rule of Civil Procedure 23;

b.  Appoint Plaintiffs as representative of the classes;

c.  Appoint the undersigned as class counsel for the class and subclass;

d.  Enter an order for injunctive and declaratory relief as described herein;

e.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein and/or restitution, to include interest and pre-judgment interest;

f.  Award Plaintiff reasonable attorneys' fees and costs; and

g.  Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 11, 2019

by: /s/ Carl V. Malmstrom
Carl V. Malmstrom
**WOLF HALDENSTEIN**
  **ADLER FREEMAN & HERZ LLC**
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: 312-984-0000
Fax: 312-214-3110
malmstrom@whafh.com

Janine L. Pollack
**THE SULTZER LAW GROUP P.C.**
351 W. 54th Street, Suite 1C
New York, New York 10019
Tel.: (212) 969-7810
Fax: (888) 749-7747
pollackj@thesultzerlawgroup.com

Stephen P. DeNittis
Joseph A. Osefchen
Shane T. Prince
**DeNITTIS OSEFCHEN PRINCE, PC**
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: 856-797-9951
Fax: 856-797-9978
sdenittis@denittislaw.com
josefchen@denittislaw.com
sprince@denittislaw.com

Frederic S. Fox
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Fax: 212-687-7714
ffox@kaplanfox.com

Laurence D. King
Mario M. Choi
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Fax:  415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

Hunter Jay Shkolnik
Paul Brian Maslo
Salvatore C. Badala
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue, 11th Floor
New York, NY 10017
Telephone: 212-397-1000
Fax: 646-843-7603
pmaslo@napolilaw.com
hunter@napolilaw.com
sbadala@napolilaw.com

Marc A. Wites
**WITES LAW FIRM**
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954-933-4400
Fax: 954-354-0205
mwites@witeslaw.com

Joseph G. Sauder
Matthew D. Schelkopf
**SAUDER SCHELKOPF**
555 Lancaster Ave.
Berwyn, PA 19312
Telephone: 610-200-0580
jgs@sstriallawyers.com
mds@sstriallawyers.com

Brittany Weiner
**IMBESI LAW, P.C.**
450 Seventh Avenue
Suite 1408
New York, NY 10123
Telephone: 646-767-2271
Fax: 212-658-9177
brittany@lawicm.com

Justin Farahi
Raymond M. Collins
**FARAHI LAW FIRM APC**
22760 Hawthorne Boulevard Suite 230
Torrance, CA 90505
Telephone: 310-774-4500
Fax: 424-295-0557
justin@farahilaw.com
raymondfarahilaw@gmail.com

***Counsel for Plaintiffs and the Proposed
Classes***

whafhch55725